IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 7:20-623 |
| | ) | 18 U.S.C. § 1344 |
| | ) | 18 U.S.C. § 641 |
| | ) | 18 U.S.C. § 1014 |
| vs. | ) | 18 U.S.C. § 981(a)(1)(C) |
| | ) | 18 U.S.C. § 982(a)(2) |
| | ) | 28 U.S.C. § 2461(c) |
| | ) | |
| MARVETTE EASTERLING | ) | INDICTMENT |

COUNT ONE
(Bank Fraud)

THE GRAND JURY CHARGES:

RECEIVED
OCT 13 2020
U.S. DISTRICT COURT
GREENVILLE, S.C.

A. INTRODUCTION

1.    In 2008, following the onset of a financial and housing crisis, the United States Treasury Department ("Treasury") enacted the Troubled Asset Relief Program ("TARP") to stabilize the country's financial system, restore economic growth, and, prevent foreclosures. In February 2010, TARP funds were extended to the Hardest Hit Fund ("HHF"), a multi-billion dollar initiative to provide targeted aid to families in states hit hard by the economic and housing market downturn. The HHF provided funding for state housing finance agencies ("HFA") to develop locally-tailored foreclosure prevention solutions in areas that have been hit hard by home price declines and high unemployment. On March 29, 2010, a second round of HHF funding using TARP funds was announced. Each state's HHF program was designed and administered by that state's HFA.

2.    The South Carolina Housing Finance and Development Authority ("SC Housing") is a government agency of the State of South Carolina that administers the funding

received from the HHF on behalf of the Treasury. SC Housing implemented the SC HELP program as a comprehensive, statewide program focused on unemployed and underemployed homeowners who are at risk of mortgage loan default or foreclosure. SC HELP received funding from HHF for qualified homeowners.

3. SC HELP offers multiple program options to address the needs of homeowners with financial hardships who have been unable to qualify for existing loan modification and foreclosure prevention programs. Included among those programs are the Monthly Payment Assistance Program ("MPAP") and the Direct Loan Assistance Program ("DLAP"). For loan eligibility, both of these mortgage assistance payment programs require that the properties be one- to four-unit, owner-occupied primary residences located in South Carolina. Further, eligibility for mortgage assistance was premised on the homeowner owning and occupying the property in South Carolina as the homeowner's principal residence.

4. The goal of DLAP is to help borrowers become current on their mortgage during or following a brief interruption or reduction in income and to ensure long-term affordability and to prevent avoidable foreclosure for homeowners who have experienced a temporary hardship by bringing the homeowner current on his or her delinquent mortgage. If the homeowner qualified and was approved for DLAP, SC HELP would make a one-time lump sum payment directly to the mortgage loan service on behalf of the homeowner to bring such mortgage loans current. Funds may also be made available for principal reductions ancillary to a reinstatement and to reduce or eliminate any forbearance in order to ensure long-term affordability.

5. The goal of MPAP is to assist eligible households that are experiencing a temporary reduction in income or financial hardship by making the full monthly first mortgage payment for a specified period of time or until the Assistance cap is reached. If the homeowner

qualified and was approved for MPAP, SC HELP would make monthly payments directly to the loan servicer on behalf of the homeowner. The monthly payment included principal, interest, taxes, and homeowner's insurance.

6. For both DLAP and MPAP, assistance is structured in the form of a nonrecourse, zero percent interest, non-amortizing, forgivable loan secured by a subordinate lien on the subject property. The loan will be forgiven over a five-year period at a rate of 20% per year. Participation and forgiveness is based upon the homeowner continuing to own and occupy the property as the homeowner's principal residence for the duration of the assistance.

7. Homeowners apply to SC HELP through approved counseling agencies. The housing counselors work with each homeowner to screen for eligibility and develop and individualized Action Plan to address the homeowner's particular needs.

8. Upon completion of the applicant's intake documents, the housing counselor uploads the information to SC Housing through an internet portal. Once approved for SC HELP assistance, SC Housing sends applicants a congratulatory letter outlining the amount and type of assistance approved. As part of the program, a closing is scheduled and SC Housing prepares a mortgage and promissory note for the homeowner. In executing the documents, the homeowner acknowledges the homeowner's obligation to notify SC Housing of any events that would disqualify the homeowner from the program. After closing, SC Housing coordinates the payment of federal mortgage assistance funds to the homeowner's mortgage account.

9. At times material to this indictment, SC Housing was a government agency of the State of South Carolina that makes in whole or in part a federally related mortgage loan as defined in section 3 of the Real Estate Settlement Procedures Act of 1974.

10. At times material to this indictment, the Mortgage of Real Estate entered into

between South Carolina State Housing Finance and Development Authority's South Carolina Homeownership and Employment Lending Program as mortgagee and the defendant, MARVETTE EASTERLING, as mortgagor, was made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way under or in connection with a housing or related program administered by the United States Treasury Department.

### B. THE SCHEME AND ARTIFICE

11. From on or about November 7, 2014, to on or about April 1, 2016, in the District of South Carolina and elsewhere, the defendant, MARVETTE EASTERLING, did knowingly execute a scheme and artifice to obtain moneys and funds owned by, or under the custody and control of, South Carolina Housing Finance and Development Authority by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

### C. MANNER AND MEANS OF THE SCHEME AND ARTIFICE

12. The defendant, MARVETTE EASTERLING, engaged in numerous activities to accomplish the scheme and artifice. Such activities included, but were not limited to: applying for and receiving mortgage payment assistance from SC Housing for her principal residence in Gaffney, South Carolina; renting out her principal residence in Gaffney, South Carolina; collecting monthly rental income in the form of Section 8 Housing Assistance Payments for her residence in Gaffney, South Carolina; and concealing and failing to notify SC Housing as to the additional income and non-owner occupied status of her property in Gaffney, South Carolina, all in order to receive and use federal funds to which she was not eligible.

### D. EXECUTION OF THE SCHEME AND ARTIFICE

13. The Grand Jury hereby incorporates by reference and realleges all of the

allegations of Sections A, B, and C of this Indictment.

14. On or about November 7, 2014, in the District of South Carolina and elsewhere, the defendant, MARVETTE EASTERLING, knowingly executed and attempted to execute the aforementioned scheme and artifice by submitting an application which contained a false and fraudulent representation, which caused SC Housing to authorize the transfer of DLAP and MPAP funds to the mortgage servicer for the defendant, that her residence in Gaffney, South Carolina, was currently owner occupied, when in truth and in fact, as the defendant well knew, the property was not currently owner occupied.

In violation of Title 18, United States Code, Section 1344.

## COUNT TWO
(Theft of Government Funds)

THE GRAND JURY FURTHER CHARGES:

15. The Grand Jury hereby incorporates by reference and realleges all of the allegations of Sections A, B, and C of this Indictment.

16. From on or about November 7, 2014, to on or about April 1, 2016, in the District of South Carolina, the defendant, MARVETTE EASTERLING, willfully and knowingly did steal and purloin money of the United States, of a value exceeding $1,000.

In violation of Title 18, United States Code, Section 641.

## COUNT THREE
(False Statement on Loan and Credit Application)

THE GRAND JURY FURTHER CHARGES:

17. The Grand Jury hereby incorporates by reference and realleges all of the allegations of Sections A, B, and C of this Indictment.

18. On or about November 7, 2014, in the District of South Carolina, the defendant,

MARVETTE EASTERLING, knowingly made false statements for the purpose of influencing the action of SC Housing, a government agency of the State of South Carolina that makes in whole or in part a federally related mortgage loan as defined in section 3 of the Real Estate Settlement Procedures Act of 1974, in connection with an application, in that the defendant certified that her residence in Gaffney, South Carolina, was currently owner occupied, when in truth and in fact, as the defendant well knew, the property was not currently owner occupied, and that her only monthly income was $383.24 in child support, when in truth and in fact, as the defendant well knew, she was receiving monthly rental income in the form of Section 8 Housing Assistance Payments.

In violation of Title 18, United States Code, Section 1014.

## FORFEITURE

BANK FRAUD/THEFT/FALSEE STATEMENT:

Upon conviction for violation of Title 18, United States Code, Sections 1344, 641, and 1014 as charged in the Indictment, the Defendant, MARVETTE EASTERLING, shall forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

PROPERTY:

The property subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), and Title 28, United States Code, Section 2461(c) includes, but is not limited to, the following:

> Proceeds/Forfeiture Judgment:
>
> A sum of money equal to all proceeds the Defendant obtained, directly or indirectly, from the offenses charged in this Indictment, that is, a minimum of approximately $15,000.00 in United States currency, and all interest and proceeds traceable thereto, and/or such sum that equals all property derived from or traceable to his violation of 18 U.S.C. §§ 1344, 641 and 1014.

SUBSTITUTE ASSETS:

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant-

- A. Cannot be located upon the exercise of due diligence;
- B. Has been transferred or sold to, or deposited with, a third person;
- C. Has been placed beyond the jurisdiction of the court;
- D. Has been substantially diminished in value; or
- E. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property

7

of the Defendant up to the value of the forfeitable property.

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), and Title 28, United States Code, Section 2461(c).

A __TRUE__ Bill

REDACTED

FOREPERSON

_____
PETER M. MCCOY, JR.    (WIM/kk)
UNITED STATES ATTORNEY